IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTOINE SIMMONS,                              )
                                             )
              Plaintiff,                      )        No.  11 C 5328
       v.                                     )
                                             )        Judge Robert W. Gettleman
DANIEL MORECI, LIEUTENANT YOUNG,              )
OFFICER LILLY, and OFFICER ESQUEDA,           )
                                             )
              Defendants.                     )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Antoine Simmons, filed suit, pro se, against Cook County Correctional

Supervisor Moreci, Lieutenant Young, and Officers Lilly and Esqueda.  Plaintiff alleges that

defendants subjected him to deliberate indifference to a substantial risk of serious harm on April

27, 2011, while he was incarcerated at the Cook County Jail.  He alleges that while defendant

Lilly was transporting him to the health care unit, he was hit in the head with a "soap-sock" and

defendant Lilly ran off the unit, closing the door behind her, leaving him to defend himself

against an attack by several inmates.  Ultimately, he alleges, he was stabbed in the head with a

sharp metal object.  Plaintiff alleges that this attack occurred because defendant Esqueda was

mixing tiers of inmates, approved by defendant Moreci, creating a dangerous situation that led to

the attack. He further alleges that he had previously filed a grievance reviewed by defendant

Young, and spoke to defendant Young directly about his concerns for his safety.

Presently pending before the Court is defendants' motion for summary judgment (Doc.

46).  Defendants argue in their motion that the plaintiff failed to establish deliberate indifference

in their alleged failure to protect him from harm. For the reasons stated herein, defendant's

motion for summary judgment is granted in part and denied in part.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All of the evidence and the reasonable

inferences that may be drawn from the evidence are viewed in the light most favorable to the

nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000).

Summary judgment may be granted when no "reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).  A party cannot

defeat summary judgment by relying on unsubstantiated facts or by merely resting on its

pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer*

*v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party

that bears the burden of proof on an issue must affirmatively demonstrate with admissible

evidence that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476

F.3d at 490.

When defendants filed their motion for summary judgment, they included a "Notice to

Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953

F.2d 281, 285 (7th Cir. 1992), *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982), and Local

Rule 56.2. This notice clearly set out the requirements of this court's Local Rule 56.1. In

particular, the notice explains that plaintiff's response must comply with Fed. R. Civ. P. 56(e)

and Local Rule 56.1.

Local Rule 56.1(b)(3) requires a party opposing a motion for summary judgment to file:

(A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

(B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b). The district court may require strict compliance with Local Rule 56.1. *See*

*Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v.*

*Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (strict compliance

with the local rules governing summary judgment is upheld given the importance of local rules

that structure the summary judgment process); *United States v. Dunkel*, 927 F.2d 955, 956 (7th

Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Despite being given the L.R. 56.2 notice, plaintiff failed to adequately respond to

defendants' Rule 56.1 statement of facts. (*See* Plaintiff's Local Rule 56.1 (E) filing, Doc. 60).

Plaintiff largely failed to support his responses with references to the record. The responses in

which he did reference the record, in most cases, did not adequately refute the statement.

However, the court also reviewed and considered evidence contained in the record to the extent

it was material. Consequently, defendants' facts contained in their Rule 56.1 statement, to the

extent that they are material, adequately supported by the record, and not controverted by

evidence in the record, are deemed admitted.

## FACTS

Plaintiff alleges in his complaint that on April 27, 2011, other inmates attacked him while

he was a detainee at the Cook County Jail. ("CCJ"). Plaintiff alleges that defendants could have

prevented the attack, and that defendants failed to protect him and acted with deliberate indifference.

On the day in question, plaintiff was assigned to Division 9, tier 2B at CCJ. Division 9 was then, and still is, a super maximum-security division. Plaintiff's tier was not on lockdown, which means approximately twelve inmates could enter the dayroom at one time. Inmates on that tier were members of various street gangs. Plaintiff is associated with the Vice Lords and Latin Kings, but avoided the Gangster Disciples or Black Disciples.

Around 12:00 p.m. on April 27, 2011, paramedics were called to plaintiff's cell as he was suffering from high blood pressure and was dizzy. Two paramedics arrived and determined plaintiff needed an EKG, so plaintiff was led off the tier.

Defendant Lilly was monitoring plaintiff's tier at the time, because she had relieved another officer who was on break. As defendant Lilly, an unknown male officer and the two paramedics were walking plaintiff off the tier, another inmate came from plaintiff's "blind side" and hit him in the head with a sock that contained bars of soap. In response to being hit in the head, plaintiff began fighting with seven different inmates in the dayroom, using his fists. At some point during the fight, plaintiff was stabbed on the top of his head with a homemade knife, which in the CCJ is referred to as an "ice pick."

Plaintiff never told defendant Lilly that he was in fear for his safety, that he had been threatened by anyone at the jail, that he was going to be attacked by anyone, or that he would not have left his cell if he had knowledge that he was going to be attacked on April 27, 2011. When the fighting started, defendant Lilly and the two paramedics ran out of the dayroom, shutting the door behind them. Defendant Lilly immediately called a "10-10"(inmates fighting) on her radio

and waited for backup officers to arrive. While he was fighting with other inmates, plaintiff was able to look and see officers from every area within Division 9 were in the secure observation area immediately outside the door of the tier, known as the "bubble," ready to enter the dayroom. At least 20-25 officers came in the dayroom and ordered everyone to the ground, and plaintiff saw two homemade weapons were recovered from the tier.

Responding personnel arrived in two to three minutes, followed by supervisors who arrived a few minutes later. Once supervisors arrived, responding staff entered the dayroom and gave verbal orders to detainees to stop fighting, which were complied with. Protocol at the CCJ is that, for security reasons, tier officers do not enter a dayroom when inmates are fighting, and in Division 9, once an incident occurs supervisors must respond before officers can go in.

From the time plaintiff was hit with the soap sock until the time officers arrived in the dayroom, the entire incident lasted approximately seven to ten minutes. Plaintiff did not press charges against any of his attackers. Plaintiff did not ask to go into protective custody after the attack; however, he had previously asked to be moved to a different tier, because of his fear for his safety. Plaintiff received treatment for his injuries, but did not receive any stitches or staples for his stab wound. No medical doctor diagnosed plaintiff with having a concussion or any type of brain injury as a result of this attack.

On April 18, 2011, plaintiff wrote a grievance because he was leery and heard that something was about to happen. Plaintiff filed the grievance because defendant Esqueda was allowing two tiers of inmates out of their cells at the same time, creating an unsafe environment. Plaintiff was concerned for his safety and filed the grievance because he believed that defendant

Esqueda was talking to other gang members about attacking plaintiff. Defendant Esqueda was not working on April 27, 2011, the day plaintiff was attacked, but had worked earlier that week.

Defendant Young was named as a  because on April 20, 2011, he answered plaintiff's grievance, stating that he had "spoken with Officer [Esqueda] concerning [plaintiff's] complaint…"  Defendant Young recommended that plaintiff "remain humble"and follow orders given by staff and he would be "o.k".  Plaintiff did not see defendant Young at all on April 27, 2011, either before or after the incident.

Plaintiff did not see defendant Moreci prior to the incident on April 27, 2011; however defendant Moreci did come to the tier after the incident occurred.  Defendant Moreci is present in Division 9 only when there is an incident.  Plaintiff never told defendant Moreci that he was in fear for his safety, nor did defendant Moreci have any knowledge of specific threats to plaintiff's safety prior to April 27, 2011.

## ANALYSIS

The Eighth Amendment, as applied to the various states through the Fourteenth Amendment, requires prison officials to "take reasonable measures to guarantee the safety of the inmates."[1] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). "While prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury within a prison is an Eighth Amendment violation." *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515,

---

[1]Because plaintiff was a pretrial detainee at the time of his injuries, his § 1983 claim is analyzed not under the Eighth Amendment but under the Due Process Clause of the Fourteenth Amendment. *See Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002).  However, the deliberate indifference standard applies with as much force in cases involving pretrial detainees. *Estate of Cole v. Fromm*, 94 F.3d 254, 259 (7th Cir. 1996); *Salazar v. City of Chi.*, 940 F.2d 233, 237 41 (7th Cir. 1991).

517 (7th Cir. 2002). To prove a failure to protect claim, a plaintiff must establish that: (1) he faced

a substantial risk of serious injury, and (2) the defendant acted with deliberate indifference to that

risk. *Farmer*, 511 U.S. at 834; *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). Mere negligence

is insufficient. *Farmer*, 511 U.S. at 835. The officer must have actually known of a substantial risk

of harm to the plaintiff's safety, yet failed to take appropriate steps to protect him from the specific

danger. *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008). In other words, knowledge

of only a general risk of violence is insufficient. *Id.*; *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir.

2005); *Brown*, 398 F.3d at 909. A failure-to-protect claim usually requires proof that the officer

knew of a risk of violence specific to the inmate. *See Fisher*, 414 F.3d at 664; *Butera*, 285 F.3d at

607.

### A.     Officer Lilly

Plaintiff admits that he never told defendant Lilly that he was in fear for his safety, that he

had been threatened, or that he believed he would be attacked. She clearly had no knowledge of any

substantial risk of injury; rather plaintiff's claim against defendant Lilly is that she failed to

intervene once the fight began. However, correctional officers are not required to put themselves

at risk by breaking up a fight between inmates armed with weapons. *Peate v. McCann*, 294 F.3d 879,

883 (7th Cir. 2002) (*citing MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995) (failing to

intervene between inmates fighting with weapons does not constitute deliberate indifference);

*Arnold v. Jones*, 891 F.2d 1370, 1373 (8th Cir. 1989) (if intervening in a prison fight could cause

serious injury, guards have no duty to do so as a matter of law).

In addition, defendant Lilly submitted an affidavit explaining that in plaintiff's super

maximum security housing division, correctional officers are specifically prohibited from entering

the dayroom after a "10-10" has been called until a superior officer arrives at the scene. The evidence establishes that CCJ protocol for officers when a fight breaks out that presents a safety and security concern is to leave the dayroom, closing the door behind her, to call for assistance, and await backup and supervisory approval before responding. The record establishes that within minutes twenty to twenty-five officers responded to defendant Lilly's call for assistance within two to three minutes, with supervisors following a couple of minutes later. Within seven to nine minutes of the alleged altercation starting, staff re-entered the dayroom and gave orders to break up the fight.

The actions taken by defendant Lilly when the fight broke out belie any inference of deliberate indifference. She took appropriate steps once the fight began. Defendant Lilly was not constitutionally required to confront a large group of inmates in the throes of a violent attack; indeed, to have done so would have been contrary to express jail policy. Consequently, plaintiff's deliberate indifference claim against defendant Lilly based on failure to intervene fails.

**B.     Superintendent Moreci**

The evidence establishes that defendant Moreci, like defendant Lilly, had no prior knowledge of a substantial risk of serious harm. Plaintiff provided information in his deposition that defendant Moreci was not often in the cell house and that he did not speak to defendant Moreci prior to the April 27, 2011, altercation. Plaintiff testified that he did not see defendant Moreci until after the alleged attack.

Because there is no evidence of prior knowledge, plaintiff's claim against defendant Moreci consists of a failure to investigate the handling of the grievance he filed on April 18, 2011. However, there is no evidence that defendant Moreci ever saw the grievance. Plaintiff appears to have sued defendant Moreci because of his supervisory position at the CCJ. Section 1983, however,

8

creates a cause of action based on personal liability and predicated upon fault; "to be liable under § 1983, an individual  must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005).  Further, any failure on the part of supervisory officials to investigate or discipline an alleged wrongdoer after the fact would not amount to a constitutional violation. *See Vukadinovich v. McCarthy*, 901 F.2d 1439, 1444 (7th Cir. 1990); accord, *Barbosa v. McCann*, No. 08 C 5012, 2009 WL 2913488, *6 (N.D. Ill. Sep. 8, 2009) (an individual has no right to compel the prosecution of another).  Because there is no evidence that defendant Moreci had any involvement until after the attack, plaintiff's claim against him fails.

**C.      Defendants Esqueda and Young**

With respect to defendants Esqueda and Young, the record is less clear, and questions of material fact exist.  On April 18, 2011, plaintiff had a conversation with defendant Esqueda because he was concerned for his safety.  Plaintiff filed the grievance on April 18, 2011, because defendant Esqueda was opening two tiers of cells at one time and was doing so in the hope that plaintiff would be harmed.  In response, defendant Esqueda submitted an affidavit stating that she was not working on the day of the incident and has no knowledge of the events of that day.

Defendant Esqueda's affidavit states that she had no knowledge of plaintiff having concerns for his safety or of having been threatened.  Consequently, the court is left with a classic "he said/she said" scenario.  Plaintiff testifies of a conversation in which defendant Esqueda indicated that she wished him harm and that she was taking steps to ensure that harm to plaintiff by speaking to gang members about hurting him.  The court finds that the record presented precludes judgment as in *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002), in which the plaintiff alleged that the defendants were "out to get him" and facilitated a situation in which other inmates "if given a chance, would

9

attack [plaintiff]." *Id.*; *see also Cantu v. Jones*, 293 F.3d 839, 843-44 (7th Cir. 2002) (the court found that there was sufficient evidence on which the jury had based its decision for the plaintiff when the plaintiff asserted that officers conspired to allow an inmate escape to attack the plaintiff).

A reasonable jury could find that defendant Esqueda placed plaintiff in danger by her actions. On summary judgment, the court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986). Because there is a question of fact as to whether defendant Esqueda placed plaintiff in danger of attack, as to her the motion is denied.

The same reasoning applies as to defendant Young. Plaintiff filed his grievance on April 18, 2011, expressing his concerns for his safety because of defendant Esqueda's conduct. Defendant Young responded to the grievance, stating that he had talked to defendant Esqueda, and admonishing plaintiff to "remain humble and follow orders of staff." There is a material question of fact as to whether defendant Young's response was a reasonable one, in light of plaintiff's concerns that defendant Esqueda was actively creating an environment in which plaintiff was in danger of attack. Because plaintiff has provided sufficient evidence to create a material of question of fact with respect to deliberate indifference on the part of defendants Esqueda and Young, the court denies the motion for summary judgment as to them.

## CONCLUSION

For the foregoing reasons, defendants Moreci, Young, Lilly, and Esqueda's motion for summary judgment (Doc. 46) is granted in part and denied in part. The court grants the motion as

to defendants Lilly and Moreci and denies it as to defendants Esqueda and Young.  Pursuant to

Local Rule 72.1, this case is hereby referred to the calendar of Honorable Michael T. Mason for the

purpose of holding a settlement conference, with a recommendation that settlement assistance

counsel be appointed for plaintiff.  This matter is set for status on April 30, 2013, at 9:00 a.m.


**ENTER:**          **January 24, 2013**

_____
       **Robert W. Gettleman**
       **United States District Judge**